**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER A. ORZECH,<br>               Plaintiff,<br><br>        v.<br><br>MUHLENBERG TOWNSHIP,<br>               Defendant. | No. 5:18-cv-03938 |

**O P I N I O N**

**Defendant's Motion to Dismiss, ECF No. 15 - Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**                                                                    **November 22, 2019**
**United States District Judge**

## I. INTRODUCTION

Plaintiff, a former employee of the Defendant township, brought this action against the township based on an employment dispute. Claims under the Americans with Disabilities Act, the Pennsylvania Human Relations Act, and Pennsylvania common law have been asserted. After the Court originally dismissed Plaintiff's complaint for failure to state a claim, Plaintiff filed an amended complaint. Defendant has again moved to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

## II. FACTUAL BACKGROUND[1]

As previously stated, Plaintiff alleges the following facts:

---

[1] The background information in this section is taken from the amended complaint and is set forth as if true solely for the purpose of analyzing the pending motion to dismiss. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Defendant Muhlenberg Township is a municipal township in Pennsylvania. Plaintiff Christopher Orzech worked for Defendant as a police officer since March 1989. In August 2015, Plaintiff suffered an injury to his left shoulder which caused an extended absence from his position as a police officer.

Almost a year after Plaintiff's ongoing absence began, Defendant offered Plaintiff the opportunity to return to work as a temporary "Property Maintenance Officer and Park Attendant/Caretaker." This position was with another department within the township. The position generally involved looking after Defendant's parks and comprised of tasks such as cleaning restrooms, emptying trashcans, sweeping walks and pavilions, and cleaning tables. These tasks necessarily involved the use of Plaintiff's injured left shoulder.

Although the tasks associated with the position involved the use of Plaintiff's injured left shoulder, Defendant did not consult Plaintiff or Plaintiff's surgeon with respect to the position and its responsibilities. According to Plaintiff, the appointment to this position allegedly violated a recommendation made to Defendant. The recommendation came from an independent medical evaluation that Defendant required Plaintiff to undergo because of his ongoing absence from his position as a police officer.

Plaintiff alleges that Defendant appointed Plaintiff to this position even though it knew the Plaintiff could not fulfill the essential functions of the position because of his injured left shoulder. Defendant allegedly knew that Plaintiff's shoulder injury prevented him from picking up litter, sweeping walks and pavilions, spot cleaning the restrooms, cleaning tables, or all of those tasks. Defendant also allegedly knew that Plaintiff could not clear snow and did not possess the necessary physical agility to ascend or descend steps of various heights because of Plaintiff's significant restrictions on his ability to lift.

Plaintiff further alleges that Defendant knew that Plaintiff did not possess the proper qualifications for the position. Plaintiff had no experience maintaining property or inspecting new property. Plaintiff was also unfamiliar with the legal and weight-bearing requirements of new construction. Defendant also knew that Plaintiff did not possess familiarity with general park rules or regulations and was unqualified to interpret them.

Even though Defendant knew that Plaintiff physically could not fulfill the essential functions of the position and that Plaintiff did not possess the proper understanding or qualifications for the position, Defendant still instructed Plaintiff to show up for work on July 25, 2016.

In addition to those factors related to the position as a temporary "Property

> Maintenance Officer and Park Attendant/Caretaker," Defendant allegedly took actions to generally humiliate and embarrass Plaintiff. For example, Defendant required Plaintiff to wear a visitor's badge to enter a township building despite the fact that Plaintiff still had access to the building through his key fob. Defendant's employee in charge of payroll also wrote hostile emails and delayed production of the emails to Plaintiff in February 2017 because he requested copies of his pay stubs from August 2016 to December 2016.

Opinion, ECF No. 10.

However, Plaintiff has pled additional facts as well. Plaintiff alleges he requested a light duty accommodation, which Defendant denied. Plaintiff further alleges, Defendant granted his requests for a light duty assignment at least three times prior. Those assignments were typically desk duty. He alleges he was qualified to perform his job with a reasonable accommodation.

Due to alleged discrimination by Defendant, Plaintiff filed an EEOC Charge of Discrimination in August 2016. After Plaintiff filed his EEOC Charge of Discrimination, at a mediation for his workers' compensation claim on December 21, 2016, the police commissioner revoked his prior offer to resolve Plaintiff's workers' compensation claim unless Plaintiff withdrew his EEOC Charge of Discrimination. Plaintiff alleges it was only until he filed his EEOC Charge of Discrimination that Defendant finally provided him with his service weapon, but charged Plaintiff a fee to receive the weapon when it was customary that a disabled police officer would be able to carry his weapon without having to pay a fee. Plaintiff ultimately resigned on March 17, 2017.

### III. PROCEDURAL HISTORY

Plaintiff originally filed his complaint on September 12, 2018. This Court, however, dismissed Plaintiff's complaint in an Order dated August 13, 2019. Plaintiff filed an amended complaint on September 6, 2019. Defendant moved to dismiss Plaintiff's amended complaint on

September 24, 2019. Plaintiff failed to respond to Defendant's motion. The matter is now ripe for review.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for its "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). The Rules generally demand "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cty. of Allegheny*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002) (internal quotations omitted)). Only if "the '[f]actual allegations . . . raise a right to relief above a speculative level'" has the plaintiff stated a plausible claim. *Id*. at 234 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the

burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hodges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

V. **ANALYSIS**

Defendant generally argues for dismissal on the basis Plaintiff failed to properly plead the claims asserted. Without a response to Defendant's motion, the Court can consider only Defendant's arguments. For the following reasons, however, the Court grants Defendant's motion to dismiss in part and denies in part.

A. **Plaintiff's amended complaint only states a plausible claim for his ADA retaliation claim**

Plaintiff asserts claims under the Americans with Disabilities Act (ADA), the Pennsylvania Human Relations Act (PHRA), and Pennsylvania common law. Specifically, Plaintiff asserts the following claims: (1) violations of Americans with Disabilities Act, Discrimination (Count I); (2) violations of Americans with Disabilities Act, Retaliation (Count I); (3) violations of the Americans with Disabilities Act, Hostile Work Environment (Count I); (4) violations of the Pennsylvania Human Relations Act (Count II);[2] and (5) common law retaliation for filing a workers' compensation claim (Count III).

  1. <u>Discrimination and Hostile Work Environment Violations of Americans with Disabilities Act and Pennsylvania Human Relations Act</u>

The ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or

---

[2]    Since PHRA claims are analyzed coextensively with ADA claims, *see Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996), the Court considers Plaintiff's general ADA claims together with Plaintiff's claim under the PHRA.

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112; *Sutton v. United Air Lines*, 527 U.S. 471, 475 (1999) ("The [ADA] . . . prohibits certain employers from discriminating against individuals on the basis of their disabilities.") "Discrimination under the ADA encompasses not only such disparate treatment but also the failure to provide a reasonable accommodation for an individual's disability." *Reilly v. Upper Darby Twp.*, 809 F. Supp. 2d 368, 377 (E.D. Pa. 2011). Plaintiff appears to advance a claim that Defendant discriminated against him by failing to provide a reasonable accommodation for his disability and instead constructively discharging him.

To plead a prima facie case of discrimination under the ADA a plaintiff must allege (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an "adverse employment decision" as a result of discrimination. *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004); *see also O'Donnell v. Colonial Intermediate Unit 20*, No. 12-cv-6529, 2013 U.S. Dist. LEXIS 43103, at *14 (E.D. Pa. Mar. 27, 2013).

Defendant argues generally that Plaintiff has not pled a plausible prima facie case under the ADA. The Court believes Plaintiff pled sufficient facts to show he is a disabled person within the meaning of the ADA, *see* 42 U.S.C. § 12102(1) and 42 U.S.C. § 12102(2)(A), but did not plead sufficient facts to establish he is a qualified individual and considers that below.

    a. *Qualified Status*

The second element of a claim for discrimination under the ADA requires Plaintiff allege that he is otherwise qualified to perform the essential functions of a job, with or without

reasonable accommodations by the employer. In other words, Plaintiff must allege that he is a "qualified individual." *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 768 (3d Cir. 2004) (citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir. 1998)). "Under the ADA, a reasonable accommodation includes 'reassignment to a vacant position.'" *Reilly v. Upper Darby Twp.*, 809 F. Supp. 2d 368, 380 (E.D. Pa. 2011) (quoting 42 U.S.C. § 12111(9)(B))). In order for a plaintiff to establish that a transfer to a vacant position is a reasonable accommodation, he or she must establish: "(1) that there was a vacant, funded position; (2) that the position was at or below the level of the plaintiff's former job; and (3) that the plaintiff was qualified to perform the essential duties of this job with reasonable accommodation." *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 230 (3d Cir. 2000). Being qualified for the position includes having "the requisite skill, experience, education and other job-related requirements of the employment position." 29 C.F.R. § 1630.2(m).

Here, once again, Plaintiff has not alleged sufficient facts in the amended complaint, if proven, that would demonstrate he was qualified to perform the essential functions of: (1) his previous job as a police officer, (2) the offered job as a property maintenance officer and park attendant/caretaker, (3) or some other position with the township that is vacant with or without a reasonable accommodation. *See Yotcheva v. City of Philadelphia Water Dep't*, 518 Fed. App'x. 116, 122 (3d Cir. 2013) (stating "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation"). The amended complaint states Plaintiff was generally unqualified and unfit to perform the essential functions of the offered job as a property maintenance officer and park attendant/caretaker and then makes a conclusory remark on how he is a qualified individual that can perform the job with a reasonable accommodation without specifying factually how that is

7
112219

possible. The conclusory remark Plaintiff is a qualified individual is insufficient without supporting factual detail. Plaintiff additionally states on three prior occasions he received a desk job while on light duty, but failed to factually plead there was a vacant, funded position where he could perform the essential functions of the job in the instant case. He also failed to factually plead on the severity of his injuries and whether those injuries would be temporary or permanent. *See Buskirk v. Apollo Metals,* 307 F.3d 160, 169 (3d Cir. 2002) (stating the ADA "does not require an employer to create a new position . . . [or] transform a temporary light duty position into a permanent position"). Accepting the allegations in the amended complaint as true and viewing them in a light most favorable to Plaintiff, Plaintiff failed to plead sufficient facts to infer that he is otherwise qualified to perform the essential functions of a job with or without reasonable accommodations by Defendant.

Accordingly, Plaintiff's claim of ADA discrimination fails because he fails to allege facts showing he was a qualified individual. Because Plaintiff has not shown he was a qualified individual, he cannot satisfy all three elements of discrimination under the ADA, and the Court need not analyze whether he suffered an adverse employment decision. Thus, Plaintiff's ADA discrimination claim is dismissed with prejudice as he has already received a prior opportunity to amend his complaint.

As Plaintiff failed to allege facts establishing he was a qualified individual, Plaintiff's hostile work environment claim is also dismissed. *See Walton v. Mental Health Ass'n, of Southeastern Pa.*, 168 F.3d 661, 667 (3d Cir. 1999) (holding that to establish a hostile work environment claim under the ADA, an individual must show he is a "qualified individual with a disability under the ADA").

8
112219

2. <u>Retaliation under the Americans with Disabilities Act and Pennsylvania Human Relations Act</u>

To plead a prima facie case of retaliation under the ADA a plaintiff must allege: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Retaliation claims differ from discrimination claims under the ADA "in that they do not require a plaintiff to prove he or she has an actual disability; rather, a plaintiff need only show that he or she requested an accommodation in good faith." *Barber v. Subway*, F .Supp. 3d 321 (M.D. Pa. 2015).

As to the first element of retaliation, requesting an accommodation is a protected employee activity under the ADA. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir.2003); *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010). For the second element, in this instance, Plaintiff alleges he was constructively discharged. A plaintiff who voluntarily resigns may, nonetheless, have suffered an adverse employment action if he was constructively discharged by the defendant. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502–03 (3d Cir. 2010); *see also Embrico v. U.S. Steel Corp.*, 245 Fed. App'x 184, 187 (3d Cir. 2007); *Baker v. Consol. Rail Corp.*, 835 F. Supp. 846, 852 (W.D. Pa. 1993). An employee is constructively discharged when "a reasonable person in the employee's position would have felt compelled to resign-that is, whether he would have had no choice but to resign." *Embrico*, 245 Fed. App'x at 187 (citing *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)). When considering whether a plaintiff was constructively discharged, the court will "search the record for indicia of subtle coercion, such as threats of discharge, suggestions to the employee that he resign or retire, demotions or reductions in pay or benefits, alterations in job

responsibilities, unfavorable performance evaluations, and false accusations of stealing or misconduct." *Baker*, 835 F. Supp. at 852. A voluntary decision to resign must be "informed, free from fraud or misconduct, and made after due deliberation." *Embrico*, 245 Fed. App'x at 187 (citing *Baker*, 835 F. Supp. at 852).

As for the causation analysis, it is highly fact-based, and depends on the particular context in which the events occurred. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). A plaintiff can generally establish a causal connection by showing that the temporal proximity between the protected activity and the adverse action is "unusually suggestive," or through a combination of timing and other evidence of ongoing antagonism or retaliatory animus. *Id*.

Here, Plaintiff pled sufficient facts in his amended complaint to establish a prima facie showing of retaliation under the ADA. Plaintiff first pled he engaged in the protected activity by requesting a reasonable accommodation by issuing a letter to Defendant in July 2016. After issuing the letter, Plaintiff was dissatisfied with Defendant's response and filed an EEOC Charge of Discrimination in August 2016. Then, Plaintiff pled sufficient facts for an adverse employment action because after Plaintiff engaged in protected activity Defendant allegedly: (1) revoked a settlement offer for Plaintiff's workers' compensation claim at a mediation in December 2016 because Plaintiff filed his EEOC claim, (2) initially refused to provide Plaintiff his service weapon and only after Plaintiff filed his EEOC claim, provided Plaintiff his weapon under the condition he pay for it which is allegedly uncustomary, (3) ordered Plaintiff to wear a visitor badge to enter the township building even though he has access to the building through his key fob, and (4) stopped Plaintiff's direct deposit paychecks under the accusation he failed to sign off his workers' compensation checks. As a result, Plaintiff ultimately resigned on March

17, 2017.

Consequently, in construing the amended complaint in a light most favorable to Plaintiff, the ADA and PHRA retaliation claims are sufficient to survive dismissal as the factual allegations show adverse employment actions which alter the term and conditions of employment causing Plaintiff to resign. The facts are linked to the protected activity by their timing, these events occurred approximately five months after Plaintiff requested a reasonable accommodation and filed an EEOC Charge of Discrimination, and by their ongoing antagonism in the aftermath of Plaintiff's protected activity. Accordingly, this Court concludes that Plaintiff has stated a claim for ADA and PHRA retaliation.

3. Common Law Retaliation

In the third count of his amended complaint, Plaintiff asserts a claim for "unlawful retaliation and constructive discharge because he sought worker's [sic] compensation benefits" Am. Compl. 8; ECF No. 13.

Pennsylvania recognizes a common law cause of action for wrongful discharge of an employee who has filed a claim for workers' compensation. *See Shick v. Shirey*, 716 A.2d 1231, 1238 (Pa. 1998); *see also Steele v. Pelmor Labs., Inc.*, 725 F. App'x 176, 181 (3d Cir. 2018) (holding that Pennsylvania recognizes a cause of action for terminating an employee in retaliation for filing a workers' compensation claim). While the elements of this type of common law claim have not been established by the Pennsylvania Supreme Court, the United States Court of Appeals for the Third Circuit analyzes such claims using the *McDonnell Douglas*[3] framework. *Steele v. Pelmor Labs., Inc.*, 725 F. App'x 176, 181 (3d Cir. 2018) (citing *Theriault v. Dollar*

---

3   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009)); *see also Deily v. Waste Mgmt.*, 55 F. App'x 605, 608 (3d Cir. 2003). Therefore, to plead a prima facie claim of retaliatory discharge a plaintiff must allege: "(1) the employee engaged in a protected activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Deily v. Waste Mgmt.*, 55 F. App'x 605, 608 (3d Cir. 2003) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000) (citations omitted)).

This claim must be dismissed as Plaintiff again failed to sufficiently plead facts pertaining to common law retaliation. Besides references to workers' compensation and a legal conclusion that Plaintiff was retaliated against for filing for workers' compensation, the amended complaint does not include any factual assertions that Plaintiff filed for workers' compensation. Moreover, even if the Court deduced from these assertions that Plaintiff did file for workers' compensation, the lack of any temporal details as to when Plaintiff filed for workers' compensation and when an adverse employment action occurred prevents the Court from determining the alleged adverse action was after or contemporaneous with the workers' compensation claim. Further, accepting the allegations in the amended complaint as true and viewing them in a light most favorable to Plaintiff, the amended complaint does not plead sufficient facts for the Court to infer a causal link between Plaintiff filing for workers' compensation and Defendant taking an adverse action against Plaintiff.

Accordingly, this Court concludes that Plaintiff has failed to state a claim for common law retaliation upon which relief may be granted. This claim is therefore dismissed with prejudice as Plaintiff received a prior opportunity to amend his complaint.

## VI. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is granted in part and denied in part. Plaintiff's claims of discrimination, hostile work environment, and common law retaliation are dismissed with prejudice as Plaintiff had a prior opportunity to amend his complaint. Plaintiff's ADA and PHRA retaliation claim may proceed. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge