UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| CHRISTOPHER A. ORZECH, | : |
|                   Plaintiff, | : |
|      v. | :      No. 5:18-cv-03938 |
| | : |
| MUHLENBERG TOWNSHIP, | : |
|                   Defendant. | : |

_____

**O P I N I O N**
**Motion for Summary Judgment, ECF No. 39 - Granted**

**Joseph F. Leeson, Jr.**                                                                            **October 28, 2020**
**United States District Judge**

**I.      INTRODUCTION**

      Plaintiff Christopher Orzech filed suit against Defendant Muhlenberg Township, alleging, *inter alia*, violations of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Resources Act ("PHRA"). Following two motions to dismiss, the Township filed this unopposed Motion for Summary Judgment on the only remaining claims in the action: Retaliation under the ADA and PHRA. For the reasons stated below, the unopposed Motion for Summary Judgment is granted.

**II.     PROCEDURAL HISTORY**

      Orzech filed his first Complaint on September 12, 2018. All of the counts in that Complaint were dismissed without prejudice on August 13, 2019, following Orders granting the Township's first motion to dismiss. On September 6, 2019, Orzech filed an Amended Complaint. On November 22, 2019, all claims except the PHRA and ADA Retaliation claims were dismissed following an Order on the second motion to dismiss filed by the Township.

The remaining retaliation claims under the ADA and PHRA are now before this Court on the Township's Motion for Summary Judgment. Orzech's response to the Township's motion was due on or before August 26, 2020. This Court received no response from Orzech or his counsel. Thus, this Court reviews the motion as unopposed.

### III.    FACTUAL BACKGROUND

#### A.    Federal Rule of Civil Procedure 56(e)(2)

Rule 56(e)(2) of the Federal Rules of Civil Procedure provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

In the Township's Statement of Undisputed Material Facts, filed along with its Motion for Summary Judgment, each fact is supported by a citation to the record. *See* Stmt. Facts, ECF No. 39-2. Additionally, the cited components of the record are attached as exhibits to the Township's Statement. *See* Mot. for Summ. J. at Exs. A-H, ECF No. 39. Orzech, however, has not filed an opposition to the Township's Motion, nor has he filed an opposing statement of facts. Thus, consistent with Rule 56(e)(2) of the Federal Rules of Civil Procedure, the Township's Statement of Undisputed Material Facts are deemed undisputed. *See* Fed. R. Civ. P. 56(e)(2); *Robinson v. N.J. Mercer County Vicinage - Family Div.*, 562 F. App'x 145, 147, 149 (3d Cir. 2014) (holding that the district court did not err in concluding that the defendants' material facts were undisputed where the plaintiff failed to oppose the defendants' statement of material facts); *Schuenemann v. United States*, No. 05-2565, 2006 U.S. App. LEXIS 4350, at *15 n.7 (3d Cir. 2006) (holding that the district court properly deemed the defendants' statement of

facts as undisputed for purposes of deciding the motion for summary judgment where the plaintiff failed to respond to each numbered paragraph of the defendants' statement of facts).

### B. Undisputed Material Facts

Orzech, a police officer with the Township, suffered an on-the-job injury to his left shoulder while working on August 31, 2015, which prevented him from continuing work as an officer. *See* Orzech Dep. 20:1-3, 21:17-23, Ex. G, ECF No. 39-9. On September 1, 2015, Orzech sent a letter to the Township for the purpose of obtaining Heart and Lung benefits associated with his injury.[1] *See id.* at 21:10-16. In February 2016, Orzech underwent surgery for his injury. *See id.* at 32:22-23.

On May 18, 2016, Dr. Glaser, Orzech's surgeon, evaluated Orzech's capacity to return to work, stating Orzech could complete "Medium Duty" work with "no lifting greater than 40 pounds occasionally" and no greater than "20 pounds overhead occasionally." *See* Glaser Rep., Ex. A, ECF No 39-3. The evaluation also specified that Orzech should "avoid repetitive shoulder movements," was "[n]ot able to safely use firearms," and instructed "no climbing and no crawling." *Id.* On June 2, 2016, Dr. Mauthe, an Independent Medical Examiner, also issued a report regarding Orzech's physical capacities. *See* Mauthe Rep., Ex. B, ECF No. 39-4. Dr. Mauthe's report contained findings similar to those in Dr. Glaser's report.[2] *See id.*

---

[1]  Heart and Lung benefits act as a substitute to an officer's receipt of workers' compensation funds. The officer is required to sign his workers' compensation checks over to the Township, and in return, the officer receives his or her full pay and fringe benefits without any federal, state, or local taxes taken out.

[2]  Unlike Dr. Glaser's report, which was written open-ended, *see* Glaser Rep., Dr. Mauthe's report was a form to be filled in, *see id.* at Mauthe Rep. Because of the different forms of the reports, there are some slight differences in their findings. For example, Dr. Mauthe's form only asked about Orzech's capacity to lift 50 pounds, and did not provide a write-in for 40 pounds. *See id*. Additionally, Dr. Mauthe's report did not record whether Orzech could lift the weight

In light of his injury and restrictions, Orzech sought a light duty assignment with the Township. *See* Am. Compl. ¶¶ 19, 21-22, 24, ECF No. 13. No position with the police department matched the restrictions placed on Orzech's working ability. *See* Abodalo Dep. 38:14-20, Ex. F, ECF No. 39-8. On July 8, 2016, Township Manager Jamal Abodalo offered Orzech a position as Property Maintenance Officer and Park Attendant/Caretaker. *See* Offer Letter, Ex. C, ECF No. 39-5; Ex. D, ECF No. 39-6. As part of the offer, the Township stated that should Orzech feel any duty of the job exceeds his abilities, Orzech was to "see [his] supervisor as soon as possible to discuss."[3] *See* Offer Letter. The Township also stated it would work to accommodate Orzech's medical appointments in light of his new hours. *See id.* The job was to begin on July 25, 2016. *See id.* Orzech did not appear for his first day of work. *See* Abodalo Dep. 19:14-15. In fact, Orzech never appeared nor attempted to appear for work at all following the offer. *See id.* at 19:16-19.

On October 31, 2016, Orzech attended a deposition of Abodalo in relation to his workers' compensation benefits. *See id.* at 43:23–44:3. At that deposition, Abodalo testified that the park attendant position required no more than what Dr. Mauthe found

---

over his head. *See id.* On the other hand, Dr. Glaser provided weight restrictions for both lifting non-overhead and lifting overhead. *See* Glaser Rep. Additionally, Dr. Mauthe's report included greater detail as to Orzech's ability to lift and carry 10 pounds and 20 pounds, *see* Mauthe Rep., whereas Dr. Glaser's report only included Orzech's lifting maximums, *see* Glaser Rep. Finally, Dr. Mauthe's report indicated that Orzech could climb occasionally, *see* Mauthe Rep., whereas Dr. Glaser's report stated he could not climb at all, *see* Glaser Rep.

[3] In response to a hypothetical in which Orzech is required to lift over 40 pounds, Abodalo responded that Orzech "would contact the . . . parks and recreation supervisor and will report to her that this is not within his ability to do so. And as a result of that, we will send somebody to take care of it." *See* Abodalo Dep. 14:13-22.

4

Orzech was capable of. *See id.* at 7:4-14.[4]  The position did list general maintenance duties like "litter pickup, sweeping walks and pavilions, and spot-cleaning restrooms and cleaning tables." *Id.* at 12:10-14.  However, these duties were rarely performed as residents renting the park for an event had to put down a deposit that could be retained by the Township if the premises were not left in their original condition after the event. *See id.* at 12:15-24, 13:13-25.  Additionally, the position did not require Orzech to empty any trash cans, construct anything, rake leaves, or shovel snow. *See id.* at 15:6-24.  As such, the Township viewed the park attendant position as a "light duty position." *See id.* at 11:12-15.

On or about August 29, 2016, Orzech filed a Charge of Discrimination with the EEOC. *See* Am. Compl. ¶ 14.  From the time the offer was made on July 8, 2016 through the filing of his EEOC charge, Orzech had not reported to work. *See* Abodalo Dep. 19:14-19.  During that same period, and up until his retirement, Orzech continued to receive his Heart and Lung benefits. *See* Orzech Dep. 71:8-13.  On March 17, 2017, Orzech retired from the Township. *See id.* at 9:22-24; Ex. H, ECF No. 39-10.  He was Honorably Discharged, and he did not request a hearing. *See id.*  Thereafter, on September 12, 2018, Orzech filed the instant action, alleging claims of employment discrimination and retaliation. *See* Compl., ECF No. 1.

Orzech alleged the following retaliatory actions occurred after he filed the Charge of Discrimination:

---

[4] As part of the Parks position, Orzech was not required to lift over 40 pounds, *see* Abodalo Dep. 10:1-5, he was not required to climb or crawl, *see id.* at 10:20-22, and he was not required to use a firearm, *see id.* at 11:2-7.

(1) an offer of settlement for Orzech's workers' compensation claim was revoked, *see* Stmt. Facts ¶ 4;

(2) the Township refused to gift Orzech his service weapon upon his retirement, *see id.*;

(3) Orzech had to wear a visitor badge when he entered the township building to attend a deposition on October 31, 2016, *see id.*; and

(4) the Township stopped direct deposit of Orzech's Heart and Lung benefits, *see id.*

As to the first event, Orzech was scheduled to come to the township building for a workers' compensation mediation in December 2016.  *See id.*  Orzech testified that, once there, he was told that an original offer to settle his claim would be revoked if he did not withdraw his EEOC complaint.  *See* Orzech Dep. 63:10-22.  Orzech testified that the mediator told him this news, but could not remember the name of the mediator, could not recall who made the decision to revoke the offer, and could not recall what terms that offer contained.  *See id.* at 63:23–64:24.  Orzech did testify, however, that the original offer "wasn't good."  *See id.* at 64:8-13.  The workers' compensation case later resolved for $40,000, which amount covered Orzech's medical bills as well as the payment of his wages.  *See id.* at 66:2-4, 65:16–66:7.

As to the second event, Orzech testified that following his retirement in March 2017, he requested the Township gift him his service firearm.  *See id.* at 36:15-17.  The decision had to be approved by the Township Commissioners.  *See id.* at 36:18-21.  The Commissioners declined to provide the weapon free of charge, but the Muhlenberg Township Labor Organization paid for Orzech to have his service weapon.  *See id.* at

37:4-19. At least two other officers who retired after Orzech were not provided their firearms for free by the Township and instead had them paid for by the Labor Organization. *See id.* at 37:16-23.

As to the third event, Orzech was required to wear a visitor's badge when he entered a township building to attend the deposition of Abodalo on October 31, 2016, relating to Orzech's workers' compensation matter. *See id.* at 55:6-14. When Orzech requested to go upstairs to the deposition room, the receptionist allowed him to go upstairs, provided he wear a visitor badge.[5] *See id.*

As to the final event, the Township halted the direct deposit of Orzech's Heart and Lung benefits for a period of time. *See id.* at 67:3-8. Orzech was the recipient of "Heart and Lung" benefits, meaning the officer receives his entire pay and fringe benefits without any federal, state, or local taxes taken out. *See id.* at 71:3-7. As a condition of receiving these benefits, the officer must sign his workers' compensation checks over to the Township, which then directly deposits the Heart and Lung benefits to the officer. *See id.* at 68:6-13. Orzech's direct deposit was stopped because he was delayed in signing over some of his workers' compensation checks. *See id.* at 68:2-4. Orzech received one or two paper checks before direct deposit was resumed. *See id.* at 69:12-15. Orzech received Heart and Lung benefits from September 2015 until his retirement in March 2017. *See id.* at 71:11-14.

---

[5] Notwithstanding, at the time of the deposition, Orzech was in possession of a key fob, which he used to access the building whenever he needed to sign over workers' compensation checks for his Heart and Lung benefits. *See* Orzech Dep. 81:3-4.

## IV. LEGAL STANDARDS

### A. Unopposed Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

Where a party fails to oppose a summary judgment motion, the facts may be deemed undisputed. *See* Fed. R. Civ. P. 56(e)(3); *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d

168, 175 (3d Cir. 1990). However, the court must still analyze the motion to determine if summary judgment is appropriate, "that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." See *Anchorage Assocs.*, 922 F.2d at 175. "Where the moving party does not have the burden of proof on the relevant issues, [as here] . . . the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Id.* (citing *Celotex Corp.*, 477 U.S. 317).

### B. Retaliation under ADA and PHRA

To make out a prima facie case of retaliation under the ADA, a plaintiff must prove:

(1) protected employee activity;

(2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and

(3) a causal connection between the employee's protected activity and the employer's adverse action.

See *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

As to the first element of the prima facie case, requesting an accommodation is a protected employee activity under the ADA. See *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003). Additionally, filing a Charge of Discrimination with the EEOC is a protected activity. See *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 157 (3d Cir. 1999) ("stating a claim of discrimination" is protected activity).

As for the second element, an adverse employment action is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 78 (2006).  "[A] bruised ego is not enough"; instead, the action must "constitute[] a significant change in employment status."  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (citing *Flaherty v. Gas Res. Inst.*, 31 F.3d 451, 456 (7th Cir. 1994)).

As to the final element, a plaintiff can generally establish a causal connection by showing that the temporal proximity between the protected activity and the adverse action is "unusually suggestive," or through a combination of timing and other evidence of ongoing antagonism or retaliatory animus.  *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).  Where a plaintiff seeks to prove causation through mere temporal proximity, "the temporal proximity must be very close."  *See Clark Cnty. Sch. Dist. v. Breeden*, 523 U.S. 268, 273 (2001); *see also Gillyard v. Geithner*, 81 F. Supp. 3d 437, 445 (E.D. Pa. 2015) (finding temporal proximity of two months "is not close enough to support, on its own, an inference of retaliation").

Once a plaintiff makes out a prima facie case of retaliation, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action."  *Krouse*, 126 F.3d at 500-01 (noting the employer's burden is a "relatively light" burden of articulation, not proof (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997))).  If the employer asserts a valid reason, the burden shifts back to the plaintiff to "convince the factfinder that both the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action."  *See id.* at 501.  The plaintiff must prove that "retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process."  *Id.* (citing *Woodson*, 109 F.3d at 931-35).

An employer may obtain summary judgment, "by establishing the plaintiff's inability to raise a genuine issue of material fact as to either: (1) one or more elements of the plaintiff's prima facie case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation." *Id.* "In order to survive a motion for summary judgment in a pretext case, the plaintiff must produce 'sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action.'" *Id.* at 504 (quoting *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996)). "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

Courts within the Third Circuit analyze claims of retaliation under the PHRA using the ADA framework. *See Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 704 (W.D. Pa. 2014) ("As there is nothing in the language of [the PHRA] to warrant different treatment, the Court will apply the same federal standard to [Plaintiff's] PHRA retaliation claim." (citing *Warshaw v. Concentra Health Servs.*, 719 F. Supp. 2d 484, 503-04 (E.D. Pa. 2010))).

**V.     DISCUSSION**

    **A.     Protected Activity**

The threshold requirement for any retaliation claim under the ADA or PHRA is protected activity. *See Krouse*, 126 F.3d at 500. In this case, there are two events that qualify as protected activity: (1) Orzech's request for an accommodation and (2) his filing of a Charge of Discrimination with the EEOC.

Requesting an accommodation may qualify as protected activity, so long as such a request is made out of a good faith belief that the employee needs an accommodation. *Shellenberger*, 318 F.3d at 191.  Here, Orzech requested a light duty accommodation, and there is no evidence to suggest that his request was anything but a good faith request in light of his injury and ongoing work restrictions.

Orzech's second protected activity was his filing of a Charge of Discrimination with the EEOC in August 2016.  There is no genuine dispute of material fact as to Orzech's filing of this charge.  Therefore, there is sufficient evidence from which a jury could conclude that Orzech engaged in protected activity.

### B.      Alleged Retaliatory Events

Orzech alleges that the following retaliatory events occurred after his engagement in protected activity.  In order to survive a motion for summary judgment, Orzech must present evidence that would show that the alleged events rise to the level of an adverse employment action and are causally connected to his engagement in the protected activity.  *See Krouse*, 126 F.3d at 500.  In addition, where the Township has provided a legitimate non-retaliatory reason for any adverse action, Orzech bears the burden of producing evidence that the proffered reason is pretextual.  *See id.* at 501.

#### i.      Revocation of the Workers' Compensation Offer

Orzech first asserts that the revocation of the original offer to settle his workers' compensation claim was an adverse employment action stemming from his filing of a Charge of Discrimination with the EEOC.  While Orzech does allege that the offer was conditioned on him relinquishing the EEOC Charge, this is not prohibited.  *See Hansen v. Vanderbilt Univ.*, 961 F. Supp. 1149, 1153 (M.D. Tenn. 1997) ("[R]equiring an employee

to withdraw an EEOC claim in order to have a recommended settlement award implemented is not an adverse employment action."). The Township had no duty to make a settlement offer to Orzech; therefore, the revocation of any offer prior to acceptance is not an adverse action. *See Graves v. Fleetguard, Inc.*, No. 98-5893, 1999 U.S. App. LEXIS 27412, at *15 (6th Cir. Oct. 21, 1999) (concluding that the retaliation claim failed as a matter of law because the employer had no duty to make an employment offer to the plaintiff); *Williams v. City of Allentown*, No. 5:17-cv-04910, 2018 U.S. Dist. LEXIS 130451, at *11 (E.D. Pa. Aug. 3, 2018) (concluding that the withdrawal of an offer to settle the plaintiff's grievance before the offer's acceptance was not an adverse action to support a retaliation claim); *Brown v. City of Syracuse*, No. 5:01-CV-1523 (FJS/DEP), 2008 U.S. Dist. LEXIS 105280, at *14 (N.D. N.Y. Dec. 31, 2008) ("The Court finds that Defendant City exercised a legal right to refuse to settle a claim and that withdrawing arbitration settlement offers cannot be an adverse employment decision, as a contrary finding would force the settlement of such arbitrations."). Moreover, Orzech has not presented any evidence as to the terms of the offer that was being revoked to establish that the revocation of that offer might have dissuaded a reasonable worker from making a charge of discrimination. All he states in his deposition is that the offer that had been revoked "wasn't good." Of note, the claim was later successfully settled between the two parties in an amount sufficient to cover Orzech's medical bills and wages.

Further, in his deposition, Orzech testified that he believed he heard the news of revocation from the mediator, not from anyone at the Township, and did not know who

made the decision to revoke the offer. Accordingly, Orzech has also failed to present evidence connecting the revocation to the Township.

The Township is therefore entitled to judgment as a matter of law on this claim.

### ii. Refusal to Gift Service Firearm

Orzech next alleges that he suffered an adverse employment action in retaliation for his engagement in protected activity when the Township refused to gift him his service firearm when he retired. According to Orzech, gifting the firearm was common practice when an officer could no longer work due to a disability.

Even if this Court assumes, *arguendo*, that the refusal qualifies as an adverse employment action, Orzech fails to present evidence showing a causal connection between the refusal and his protected activity. There is no direct evidence connecting the refusal to Orzech's protected activity. Where a plaintiff relies solely on temporal proximity to make out a causal connection, the proximity must be very close. *See Breeden*, 532 U.S. at 273. Here, Orzech's most recent engagement in protected activity, the EEOC charge, took place in August 2016. Orzech did not request his firearm until March 2017. Thus, the two events are approximately seven months apart. A temporal gap of seven months does not constitute a "very close" proximity for the purpose of showing a causal connection. *See e.g.*, *Gillyard*, 81 F. Supp. 3d at 445 (finding gap of two months, alone, is not sufficient to infer causal connection). Therefore, Orzech has failed to produce evidence to show a causal connection between the refusal to gift the firearm and Orzech's protected activity.

Thus, no genuine dispute of material fact exists as to the refusal to gift the service firearm, and summary judgment is granted in the Township's favor on this claim.

### iii. Requirement of Visitor Badge

Next, Orzech alleges that there was a retaliatory adverse action when he was required to wear a visitor badge to enter the township building to attend the workers' compensation deposition on October 31, 2016. The fact that he was required to wear the badge is undisputed.

Notwithstanding, requiring an employee to wear a visitor badge does not rise to the level of an adverse employment action. As noted above, a bruised ego alone does not qualify as an adverse employment action. *Ellerth*, 524 U.S. at 761 (citing *Flaherty,* 31 F.3d at 456).

Here, requiring Orzech to wear a visitor badge while he visited the township building to attend a single deposition is not a significant change in employment status. In fact, despite the fact that Orzech never returned to work, the Township allowed Orzech to keep his key fob that granted him access to the township building, and Orzech used that key fob to gain access to the building each time he signed over his workers' compensation checks. It is evident from the undisputed facts that the visitor badge requirement does not rise above the level of a bruised ego, and the ADA and PHRA require more for a claim of retaliation.

Thus, no genuine dispute of material fact exists as to the visitor badge requirement and the Township is awarded judgment as a matter of law on this claim.

### iv. Stoppage of Direct Deposit

Finally, Orzech claims that he suffered an adverse action with the stoppage of direct deposit of his Heart and Lung benefits for a period of time. The Township does not dispute the fact that the deposits were halted. Rather, it explains that the short stoppage was due to Orzech's

failure to sign over his workers' compensation checks. In addition, Orzech admitted that he received one or two paper checks for those halted direct deposits before direct deposit resumed.

Even if the Court assumes, *arguendo*, that halting the direct deposit was an adverse employment action, the undisputed facts show that the Township halted the payments for a legitimate, non-retaliatory reason. *See Krouse*, 126 F.3d at 500-01 (citing *Woodson*, 109 F.3d at 920 n.2). Namely, Orzech failed to sign over some of his workers' compensation checks, which he is required to do in order to receive his Heart and Lung benefits.

Orzech has not offered any evidence that this proffered reason was pretextual. In fact, the lack of retaliatory animus is supported by the fact that Orzech received the monies owed under those deposits in paper check form once he signed over the workers' compensation checks.

Thus, no genuine dispute of material fact exists as to the stoppage of the direct deposit, and the judgment is granted in the Township's favor on this claim.

## VI.    CONCLUSION

The summary judgment motion is unopposed and there is no genuine dispute of material fact. When the undisputed facts are applied to the law of retaliation under the ADA and PHRA, the Township is entitled to judgment as a matter of law. For the foregoing reasons, the Township's Motion for Summary Judgment is granted.

A separate Order follows.

                                             BY THE COURT:


                                             */s/ Joseph F. Leeson, Jr.*_____
                                             JOSEPH F. LEESON, JR.
                                             United States District Judge